IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02905-MJW

JOHN C. PRICE,

    Plaintiff,

v.

LORETTA LYNCH,

    Defendant.

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE PLAUSIBLE CLAIMS**

Defendant U.S. Attorney General Loretta Lynch ("Attorney General") moves to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) on the two claims raised by Plaintiff John C. Price ("Price"). Doc. 1.

In his complaint, Mr. Price challenges the Colorado Supreme Court's redistricting plan approved in *Hall v. Moreno,* 270 P.3d 961 (Colo. 2012), following the 2010 Census, claiming that it "limits voter choice." Doc. 1 ¶ 1. Mr. Price is a registered voter in Colorado's Second Congressional District, and he alleges that the Attorney General "has the responsibility to ensure that constitutional provisions are enforced." *Id.* ¶ 2. Mr. Price was not a party in the *Hall* litigation.

He has alleged two claims against the Attorney General. First, he alleges a violation of Article I, § 2 of the U.S. Constitution, because his vote for a House of Representatives election is "ineffective because district voter population enable the Democratic Party to choose the winner prior to the general election." *Id.* ¶ 15. Mr. Price alleges that, as a result of the redistricting map the Colorado Supreme Court approved, his congressional district is "safe" for Democrats and not competitive. *Id.*

¶¶ 17-18. His alleged injury is, as he describes it, "the right to choose/vote, and the right to sue for a withheld right," by which he means "disenfranchisement." *Id.* ¶ 23.

Second, Mr. Price asserts that the Attorney General has not enforced the Supremacy Clause of the U.S. Constitution. *Id.* ¶ 24. He claims that his "loss of choice results from the 2011 redistricting following the 2010 census." *Id.* Apparently, when the Colorado Supreme Court weighed different redistricting plans, it "did not weight [sic] strongly balance and competitiveness, i.e. choice, as specified in the Constitution." *Id.* ¶ 29. Mr. Price then proposes creating different congressional districts, relying on different assumptions and employing a different method. *Id.* ¶¶ 30-38. Presumably, these new districts would ensure voter choice as Mr. Price sees it.

For relief, Mr. Price seeks declaratory and injunctive relief. He seeks declarations that (a) voter choice should be the principal criterion for redistricting for the House of Representatives; and (b) federal law takes precedence over state law in that redistricting process. Doc. 1 at 15. He also seeks injunctions directing the Court to order: (a) his preferred redistricting map replace the one that the Colorado Supreme Court approved; (b) allowing him to assist with implementation of his proposed redistricting; and (c) future redistricting plans be subject to Court review "to prevent defeat of the procedure by enlarging precincts." *Id.*

By way of background, a brief discussion on the Colorado redistricting process after the 2010 Census is appropriate. Under the Colorado Constitution, the General Assembly must "divide the state into as many congressional districts as there are representatives in congress apportioned to this state by the congress of the United States for the election of one representative to congress from each district." Colo. Const., Art. 5, § 44. Following the 2010 Census, however, the General Assembly failed to "pass a new redistricting scheme." *Hall*, 270 P.3d at 964. As a consequence, Colorado's seven congressional districts were "malappropriated" in violation of the U.S. Constitution. *Id.*

Several plaintiffs sued the Secretary of State in Denver District Court, seeking to enjoin him from using the prior redistricting maps and to replace them with complying districts. *Id.* The trial court declared the old map unconstitutional and crafted a new map. *Id.* In so doing, the court applied the factors in Colo. Rev. Stat. § 2-1-102. The parties appealed the trial court's decision to the Colorado Supreme Court, which affirmed the trial court's decision, and approved its redistricting map. *Hall*, 270 P.3d at 964.

## I.   APPLICABLE LEGAL STANDARDS.

### A.   Rule 12(b)(1) Motion.

"Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). It may consist of a facial attack on the complaint's allegations as to subject-matter jurisdiction, which questions the sufficiency of the complaint. *Id.* Or, it "may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* This motion makes a facial attach on the complaint's allegation regarding subject-matter jurisdiction.

### B.   Rule 12(b)(6) Motion.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). While the Court must accept as true the well-pleaded factual allegations of the complaint and must construe them in the light most favorable to the plaintiff, *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997), "[i]t is not . . . proper to assume that the [plaintiff] can prove facts that [he] has not alleged . . . ." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (quoted in *Twombly*, 550 U.S. at 563 n.8).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausible factual allegations are those sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. This standard requires more than the sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. Facts that are "merely consistent" with a defendant's liability are insufficient, and allegations that are compatible with lawful behavior do not plausibly suggest an entitlement to relief. *Id.*

In deciding a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded factual allegations" and view them "in the light most favorable to the plaintiff." *Casanova v. Ultibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true [ ] legal conclusion[s] couched as [ ] factual allegation[s]." *Twombly*, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II. PRICE LACKS STANDING TO BRING HIS CLAIMS AGAINST THE ATTORNEY GENERAL.

Mr. Price lacks standing to pursue his claims against the Attorney General. He cannot satisfy any of the standing requirements; that is, he cannot show, as he must, that: (1) he has suffered an injury in fact, (2) the Attorney General caused that injury, or (3) the Court may redress the alleged injury.

The power of federal courts extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. And a litigant's standing to sue is "an essential and unchanging part of the case-or-controversy requirement." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" that he has standing to sue, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and "must demonstrate standing separately for each form of

4

relief sought" and "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *see also Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (citing *Cuno*).

To satisfy the standing requirement, a plaintiff must demonstrate, as the "irreducible constitutional minimum," three elements. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560). The injury needed for constitutional standing must be "concrete," "objective," and "palpable," not merely "abstract" or "conjectural." *See Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975). Allegations of possible future injury do not suffice; rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore*, 495 U.S. at 158. A plaintiff that "alleges only an injury at some indefinite future time" has not shown an injury in fact. *Lujan*, 504 U.S. at 564 n.2.

"Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be 'fairly traceable' to the defendant, and not the result of the independent action of some third party." *Gandy*, 416 F.3d at 1154 (quoting *Lujan*, 504 U.S. at 560). "When," as in this case, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). "In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Id.* And courts are usually "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013).

Third, "it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury." *Id.* (quoting *Lujan*, 504 U.S. at 561). The redressability element is not satisfied unless a plaintiff shows "a likelihood that the requested relief will redress the alleged injury." *Steel Co.*, 523 U.S. at 103; *accord Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (relief must be "likely" to redress injury). Standing will not be found, therefore, if it is "speculative whether the desired exercise of the court's remedial powers . . . would result" in the relief sought by plaintiffs. *Id.* at 43.

General grievances about government action fail to establish standing. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan*, 504 U.S. at 573-74). If the plaintiff lacks standing, the Court lacks subject-matter jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("standing 'is perhaps the most important of [the jurisdictional] doctrines'") (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

Here, Mr. Price lacks standing to sue the Attorney General on either of his claims. Multiple reasons support this conclusion. First, he has failed to allege a concrete, objective, and palpable injury. His claims are nothing more than general grievances about the Colorado state government, seeking relief that does not tangibly benefit him more than any other Colorado voter. The allegations that Mr. Price's congressional district is "safe" for Democrats, that elections there are decided at the primary election, and that the Colorado Supreme Court did not weigh certain factors he prefers, are the sort of general grievances that do not confer standing.

The Supreme Court's decision in *Lance v. Coffman*, 549 U.S. 437 (2007), is germane and dispositive. There, four Colorado voters challenged the Colorado Supreme Court's decision in *People ex. Rel. Salazar v. Davidson*, 79 P.3d 1221 (Colo. 2003), alleging that "'Article V, § 44 of the Colorado

6

Constitution, as interpreted in *Salazar,* violated [the Elections Clause] of the U.S. Constitution by depriving the state legislature of its responsibility to draw congressional districts.'" *Lance*, 549 U.S. at 441 (quoting *Lance v. Davidson,* 379 F.Supp.2d 1117, 1122 (D. Colo. 2005)). The Supreme Court held that the plaintiffs lacked standing, reasoning that the problem with their claim was that:

> The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past. It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, 207-208, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962). Because plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim.

*Lance*, 549 U.S. at 442. As in *Lance*, Mr. Price's claims allege the same indistinct grievance about government (that the Attorney General is not enforcing certain constitutional provisions), which does not confer standing. Indeed, the gist of his complaint is that the Attorney General has a responsibility to enforce the constitutional provisions in his complaint, but has not done so. Doc. 1 ¶ 2. Those allegations, however, are insufficient to establish standing.

Second, Mr. Price cannot show that the Attorney General caused his alleged injuries. The alleged injury and challenged actions are not traceable to the Attorney General; as Mr. Price admits, they are directly traceable to the Colorado Supreme Court, which approved the 2010 redistricting map in *Hall.* Doc. 1 ¶¶ 17-18.

The Tenth Circuit has ruled that parties making similar claims as Mr. Price lack standing for failure to establish causation between the action and the alleged in jury. In *Bishop v. Oklahoma*, 333 F. App'x 361 (10th Cir. 2009) (unpublished), the plaintiffs, who were several same-sex couples, sued the Oklahoma Attorney General, the Governor, and other state officials, seeking that they be compelled to recognized their marriages. *Id.* at 362-63. The Tenth Circuit held that the couples lacked standing because their claims, which sought recognition of their marriage in Oklahoma, "are simply not connected to the duties of the Attorney General or the Governor." *Id.* at 365. The officials responsible

7

for those acts were the district court clerks. *Id.* In concluding the couples lacked standing, the court reasoned that "the alleged injury to the Couples could not be caused by any action of the Oklahoma officials…." *Id.*

Third, Mr. Price cannot establish redressability because the requested relief will not fix the alleged injury. As noted above, Mr. Price seeks multiple declarations that would modify Colorado law and two injunctions that would replace the current redistricting plan with his own, but neither form of relief will likely redress his alleged injury. For one, the Attorney General has no duties to create, administer, or implement Colorado's congressional redistricting plans. Those duties fall to the General Assembly, the Colorado Supreme Court (if the General Assembly does not approve a plan), and the Colorado Secretary of State. *See* Colo. Const., art. V, § 44; *Hall*, 270 P.3d at 964.

In sum, Mr. Price cannot establish standing to pursue either of his generalized grievances against the government. Mr. Price could have intervened in the *Hall* litigation, where he could have made the arguments that he now makes in his lawsuit. But he did not intervene. Suing the Attorney General several years later and raising generalized complaints about the redistricting criteria does not confer standing. Accordingly, the action should be dismissed for lack of subject-matter jurisdiction and without prejudice.

## II.     IN THE ALTERNATIVE, MR. PRICE'S CLAIMS ARE NOT PLAUSIBLE.

Even if Mr. Price had standing, his claims are not plausible. Under the allegations in the complaint, the Attorney General did not plausibly cause his injuries, if any. In other words, Mr. Price has failed to allege sufficient facts to show that the Attorney General, the defendant, "is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

As noted above, the officials responsible for creating, administering, and implementing Colorado's congressional district maps are state officials, not the Attorney General. Thus, to the extent

8

any violation occurred, it was those state officials who committed it. As such, Mr. Price's two claims are not plausible and should be dismissed with prejudice.

### III. CONCLUSION.

In sum, for the reasons set forth above, the motion should be granted. Mr. Price lacks standing to pursue his claims against the Attorney General, and the action should be dismissed without prejudice. In the alternative, the claims are not plausible and should be dismissed with prejudice.

Respectfully submitted,

ROBERT C. TROYER
Acting United States Attorney


s/Juan G. Villaseñor
JUAN G. VILLASEÑOR
Assistant United States Attorney
United States Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, CO 80202
Telephone: 303-454-0185
E-mail: juan.villasenor@usdoj.gov

### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on January 4, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

None.

I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand- delivery, etc.) indicated above the nonparticipant's name:

**First-Class Mail**
John C. Price
765 10th Street
Boulder, CO 80302

s/Jared Bove
U.S. Attorney's Office